UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES FOR THE USE AND BENEFIT OF     *     CIVIL ACTION
CONTRACTING KING, INC.     *
    *
VERSUS     *     NO. 09-6098
    *
CREEK SERVICES, L.L.C., ET AL.     *     SECTION "B"(2)

<u>ORDER AND REASONS</u>

Before the Court is Defendants' Motion for Summary Judgment (Rec. Doc. No. 41); Plaintiff has filed an opposition thereto at Rec. Doc. No. 42, the reply to which is found at Rec. Doc. No. 54. For the reasons articulated below,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 41) be and is hereby **GRANTED.** The Court retains discretion pursuant to 28 U.S.C. § 1367(c), to determine whether Plaintiff's remaining claims will proceed in federal court or be dismissed without prejudice to refile in the appropriate state court.

I. <u>Cause of Action and Facts of Case</u>

This case arises from contracts awarded by the U.S. Army Corps of Engineers ("USACE") to Defendant Creek Services on or about October 12, 2007 for repairs to pumping stations in the New Orleans area. (Rec. Doc. Nos. 1 at 1-2; 41-1 at 2). After executing surety agreements with Travelers Casualty and Surety Company of North America ("Travelers"), Creek Services entered into a

1

subcontract with CWW, Inc. ("CWW").  (Rec. Doc. No. 1 at 2).  As required by the Miller Act, Creek posted a performance bond and payment bond.  (Rec. Doc. No. 41-1 at 5).  It should be noted that default judgment was entered in favor of Plaintiff and against CWW, Inc. in the amount of $63,000.00 on August 27, 2010.  (Rec. Doc. No. 22).  In February, 2008 CWW entered into a subcontract with Plaintiff in which Plaintiff agreed to "furnish all necessary supervision, labor, material, services . . . and all other things necessary to fully finish and perform in a good and workmanlike manner . . . ."  (Rec. Doc. Nos. 1-1 at 7; 41-2 at 1).   More specifically, the subcontract between CWW and Plaintiff was for the performance of "Miscellaneous Repairs to Pump Stations," as per plans and specifications; all described in attachment B . . . ."  (Rec. Doc. Nos. 1-1 at 7; 41-2 at 1).   Plaintiff contends it is owed $63,000.00 for roofing replacement "work at Pump Station 5" which Creek Services "agreed to guarantee final payment . . . per its agreement with [CWW] upon receipt of the USACE acceptance of certified payrolls . . . ."  (Rec. Doc. No. 1 at 3).

Movants contend that Plaintiff's claim under the Miller Act is time barred and that as such, dismissal of that claim is mandated.  (Rec. Doc. No. 41-1).  Movants submit that the Miller Act is a federal statute that "allows persons or entities that supply [sic] labor or materials to bring a civil action for amounts unpaid following completion of their contractual obligations." *Id*. at 5.

Further, Movants state that "a claimant must commence suit under the Miller Act 'no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* (citing 40 U.S.C. § 3133(b)(4)). Movants argue that Plaintiff last rendered services on the project at issue on July 14, 2008 and thus had until July 14, 2009 to file its claim under the Miller act. (Rec. Doc. No. 41-1 at 5). Thus, as Plaintiff did not commence the instant suit until September 2, 2009, Movants contend Plaintiff's Miller Act claim is time barred and must be dismissed. *Id.* Movants also submit that the last day on which Plaintiff "provided any labor or materials for the Project was July 11, 2008." *Id.* at 2.

To support these chronological contentions, Movants attach to the instant motion the payroll sheets submitted by Plaintiff's President Carl D. King to the U.S. Department of Labor as a subcontractor from April 18, 2008 to July 11, 2008 referencing and describing the project and location as "Misc. Pump Station Repairs." (Rec. Doc. No. 41-3 at 1-26). Movants also attach the same payroll sheets for Danny East, described on the sheets as "Owner, Roofer", Kenneth Clark, described as "Owner, Labor", Chad Cotton, described as "Owner, Roofer", and Peter Martin, described as "Owner, Labor".[1] For each man, the payroll sheets begin in

---

[1]East's payroll sheets are found at Rec. Doc. Nos. 41-3 at 27-29; 41-4 at 1-23, Clark's at Rec. Doc. Nos. 41-4 at 24-46; 41-5 at 1-3; Cotton's at Rec. Doc. No. 41-5 at 4-29; and Martin's at Rec. Doc. No. 41-5 at 30-55.

April of 2008 and end the week ending in July 11, 2008. (Rec. Doc. Nos. 41-3, 41-4, 41-5). Movants also attach statements of compliance signed by each of the men listed above detailing work done on "Pump Station 5" commencing April 4, 2008 and ending July 11, 2008; each form describes the work preformed as "replacement of metal roofing on pump station number 5". (Rec. Doc. No. 41-6 at 1, 3, 5, 7, 9). Movants further attach "sign in sheets from the job sites for the Project" which appear to reflect the daily times worked on different pump stations of the project by Plaintiff's employees. (Rec. Doc. No. 41-7). The last entry, on what appears to be a sign in sheet for pump station one, is dated July 14, 2008.[2] *Id.* Movants also submit the affidavit of Creek Services' CEO Teresa Hightower which states that the last date on which Plaintiff or any other party "provided any labor, materials or services" on the Project was July 14, 2008. (Rec. Doc. No. 41-10).

Notably, Movants attach the claim form submitted by Plaintiff to Travelers on January 5, 2009 singed by Plaintiff's President "under penalty of perjury" on December 24, 2008. (Rec. Doc. No. 41-11 at 1-5). In the blank following the prompt "[d]ate you last worked on the project (not including warranty work):", Mr. King wrote "09/01/08". *Id.* at 3.

---

[2]Although Movants attach "Contractors Quality Control Report" and "Timeline CWW and Creek Services Corps Jobs" stating that work was last performed on July 14, 2008 and that roofing of pump station five was completed on July 11, 2008 respectively, neither are signed by anyone. (Rec. Doc. Nos. 41-8, 41-9).

4

Finally, Movants contend that, if Plaintiff's Miller Act claim is dismissed for untimeliness, all remaining claims will be based on state law and, Movants allege, "Plaintiff must rely on diversity jurisdiction in order to continue to prosecute this case in federal court." *Id*. at 6.  Movants suggest that diversity does not exist in the present case as both Creek Services and Plaintiff are Louisiana citizens and thus, Plaintiff's remaining claims must be dismissed. *Id*.  In their reply to Respondent's opposition Movants address the application of 28 U.S.C. § 1367(c) arguing that this Court should decline to exercise its supplemental jurisdiction over any claims that would remain were the court to dismiss Plaintiff's Miller Act claim.  (Rec. Doc. No. 54 at 14-15).

Respondent first contends that the instant motion should be dismissed as premature "as plaintiff . . . has not had the opportunity for adequate discovery."  (Rec. Doc. No. 42-1 at 7). Respondent states that it has filed several motions which "will produce evidence that raises a genuine issue of material fact" and preclude summary judgment. *Id*. at 10.  Among those motions already denied or otherwise disposed of are a motion to compel discovery (Rec. Doc. 40), a Motion for Leave to File a First Supplemental and Amended Complaint (Rec. Doc. No. 55), and a Motion for Leave to Propound Additional Interrogatories (Rec. Doc. No. 39). *Id*. at 8-9.  The motion to compel was granted in part and denied in part by the Magistrate Judge at Rec. Doc. No. 56, the Motion for Leave to

File an amended complaint was denied by the Magistrate Judge at
Rec. Doc. No. 63, and the motion for leave to propound additional
interrogatories was denied by the Magistrate Judge at Rec. Doc. No.
57.   Respondent has not, to date, requested leave to file a sur-
reply to Movants' reply.   Thus, Respondent's first contention need
not be further addressed.

Respondent next argues that its Miller Act claim is not time
barred as the sign in sheets and statements of compliance submitted
by Movants only show that July 14, 2008 was the last day on which
Respondent provided labor or services to "*some* of the job sites for
the Project". (Rec. Doc. No. 42-1 at 12).   As the Project involved
work sites in addition to those referenced in the documentation
attached to the instant motion, Respondent implies that Movants
have not fully proved that July 14, 2008 was the last day on which
labor or services were supplied to any and all sites of the
Project. (Rec. Doc. No. 42-1 at 12).   Respondent further contends
that the sign in sheets, statements of compliance, and certified
payroll documents "are unsworn and incomplete documents that are
not properly authenticated and are, therefore, incompetent summary
judgment evidence."[3]   *Id*.   (citing F.R.C.P. 56(e)).   Further
Respondent points to the claim form submitted by Plaintiff's

---

[3]Movants point out in their reply that with the exception of Ms.
Hightower's affidavit, all documents which plaintiff calls incompetent summary
judgment evidence, were produced by Plaintiff. (Rec. Doc. No. 54 at 8-9).
Movants cite to a large body of jurisprudence to support the proposition that
documents so provided are both properly authenticated and competent summary
judgment evidence. *Id*. at 9 n.35.

President Carl D. King to Travelers and signed under penalty of perjury stating that the last date on which work was performed by Plaintiff was September 1, 2008.  (Rec. Doc. No. 42-1 at 13-14).

Although less specific than the claim form, Respondent also attaches Mr. King's affidavit which states that Plaintiff "provided labor and services on the Project . . . into September of 2008." (Rec. Doc. No. 42-6 at 2).  Mr. King's affidavit also states:

> Sometime after mid-July of 2008 and into early September of 2008, [Plaintiff] was called back to pump stations on the project . . . on several occasions to address ongoing roofing problems. [Plaintiff], through inspections and other testing work on the Project, adequately demonstrated to [CWW, Creek and/or the USACE] that the reported roofing problems at the pump stations were not associated with [Plaintiff's] work scope on the Project.

(Rec. Doc. No. 42-6 at 2).  Respondent submits that the evidence before the Court "reveals that [Plaintiff's] last day of work on the project remains in dispute" as they argue Movants have "failed to affirmatively establish" that the September 2, 2009 filing of the instant suit was barred by the statute of limitations applicable to Plaintiff's Miller Act Claim.  (Rec. Doc. No. 42-1 at 14-15).  Movants' reply cites jurisprudence to support their contention that a return to a worksite to conduct repair or corrective work does not toll the one year statute of limitations under the Miller Act.  (Rec. Doc. No. 54 at 10-11).

Respondent's then argue that Movants are equitably "estopped

7

from asserting the one year period of limitations as a defense to [Respondent's] Miller Act claim." (Rec. Doc. No. 42-1 at 15). Respondent maintains that Movants conduct "reasonably mislead [Plaintiff] to its prejudice to accept the notion that Travelers was seriously engaged in its investigation of the claim and filing suit would prolong, and perhaps even forestall, resolution with Creek Services." *Id*. at 16. Respondent admits that, from the time Respondent filed its claim with Travelers on the payment bond for the $63,000.00 due "for renovations and repair work on Pump Station No. 5", "Travelers maintained that [Plaintiff's] claim was being disputed . . . and yet [] continued to maintain that its investigation of the claim was ongoing, suggesting that its position could change." (Rec. Doc. No. 42-1 at 18).

Respondent attaches multiple emails; one of which from Travelers employee Chris Dugan to Plaintiff's counsel, dated June 12, 2009 states "based on the information [Travelers] has received to date from [Plaintiff and Creek Services], at this time Travelers is not in a position to consider any portion of your client's claim undisputed. (Rec. Doc. No. 42-8 at 8). A later portion of the same paragraph state that "Creek has made it known that if it becomes clear that an amount in due and owing tp [Plaintiff], they will take the proper steps to see that payment is made." *Id*.

Despite these statements, Respondent states it "remained

hopeful that an amicable resolution would be reached based on
Travelers' repeated representations of an ongoing investigation .
. . ." (Rec. Doc. No. 42-1 at 20). Additionally attached is an
unsigned copy of a letter from counsel for Creek Services to CWW,
Inc. which suggests that, because Plaintiff disputed that the
amount of a check CWW issued to Plaintiff was the full amount due,
CWW issue Plaintiff a new check "in the undisputed amount owed" or
that CWW provide Creek's counsel with an accounting of the amounts
CWW intended to withhold from payment to Plaintiff. (Rec. Doc. No.
42-8 at 7-10).

Respondent argues that, because it "relied to its detriment on
Travelers' representations and Creek Services' acknowledgment of
amounts owed, and afforded defendants the opportunity to make good
on the Subcontractor Claim before filing" the instant suit, Movants
"should be equitably estopped from relying on the one-year statute
of limitations under the Miller Act . . ." (Rec. Doc. No. 42-1 at
20). Respondent closes by arguing that the Miller Act is not the
only basis for jurisdiction in this court and that the amount in
controversy on the other claims would exceed the $75,000.01 floor
of 28 U.S.C. § 1332 although Respondent does not address diversity
of the parties. *Id*. at 21.

## II. Law and Analysis

A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   Miller Act Claim – Statute of Limitations

The Miller Act is intended, in part, to protect the rights of a subcontractor on a government contract and should be liberally construed to accomplish this purpose. *Warrior Constructors, Inc.*

*v. Harders, Inc.*, 387 F.2d 727, 729 (5th Cir. 1967); *U.S. f/u/b/o Trans Coastal Roofing Co., Inc. v. David Boland, Inc.* 922 F.Supp. 597, 598 (S.D. Fla. 1996); 40 U.S.C. § 3131, *et seq.* "If [a] subcontractor is not paid, his only remedy is a suit under the Miller Act." *U.S. f/u/b/o B's Company v. Cleveland Electric Co. of S.C.*, 373 F.2d 585, 588 (5th Cir. 1967). A subcontractor's right to sue may be waived by clear and express provisions in the contract between the prime contractor and subcontractor. *Id.* Accordingly, in the absence of a clear expression, "the contention that there has been a waiver or release of that right must fail." *Warrior Constructors, Inc.*, 387 F.2d at 729.

An action brought under 40 U.S.C. § 3133, "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." § 3133(b)(4). The one-year statute of limitations is limitational and not jurisdiction and thus, a party may be estopped from thereupon relying where "sufficient equitable considerations exist to warrant estoppel." *U.S. ex rel Steel Smith Inc. v. Holliday Const. LLC*, 2010 WL 1379798, at *3 (S.D. Miss. Apr. 23, 2010) (citing *United States f/u/o American Bank v. C.I.T. Constrc.*, *Inc.*, 944 F.2d 253, 256 (5th Cir. 1991).

Interpreting the phrase "the last of the labor was performed or material was supplied", the Sixth Circuit "agree[d] with the

majority of courts that have interpreted the phrase and have concluded it connotes more than mere substantial completion or substantial performance of the plaintiff's obligations under its contract."[4]  *U.S. v. International Fidelity Ins. Co.*, 200 F.3 456, 459 (6th Cir. 2000) (citing *United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964)).  In that same case the court found that work done after "final inspection and acceptance of the project" did not fall within the meaning of "labor" as used in the statute and thus, would not toll the one-year statute of limitations.  *Id*.  That court stated "[t]he majority of circuits that have addressed this issue have held that remedial or corrective work or materials, or inspection of work already completed, falls outside the meaning of 'labor' or 'material' under [the statute of limitations]."[5]  *Id*. at 460. (citing *United States f/u/o Billows Elec. Supply Co. v. E.J.T. Constr. Co., Inc.*, 517 F.Supp. 1178, 1181 (E.D.Pa. 1981), aff'd. 688 F.2d 827 (3rd Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States f/u/o Magna Masonry, Inc., v. R.T. Woodfield, Inc.*, 709 F.2d 249, 250 (4th Cir. 1983); *United*

---

[4]What constitutes "labor" or supply of "materials" within the scope of the applicable statute of limitations does not appear to have been directly addressed by the Fifth Circuit to date.

[5]At the time of the Sixth Circuit's opinion in *U.S. v. International Fidelity*, now § 3133(b)(4) was 40 U.S.C. § 270b(b); revised by 2002 acts.

*States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964); *United States f/u/o State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774, 776 (10th Cir. 1968)).

Here, the evidence submitted by Movants to show the last day which services were performed by Plaintiff was July 14, 2008 seems conclusive as the majority of that evidence, save Ms. Hightower's affidavit was originally produced by Plaintiff.  Although not directly argued, any contention that work performed by Plaintiff "into early September" tolled the applicable statute of limitations cannot stand by virtue of the above outlined jurisprudence and the affidavit of Plaintiff's President.  As discussed *supra*, the affidavit states "into early September of 2008, [Plaintiff] was called back to pump stations on the project . . . on several occasions to address ongoing roofing problems. [Plaintiff], through inspections and other testing work on the Project, adequately demonstrated . . . [that the reported problems] were not associated with [Plaintiff's] work scope on the Project." (Rec. Doc. No. 42-6 at 2).  As any work then performed was clearly remedial, corrective, or an inspection of the work already completed, it cannot be considered "labor" such that it would toll the statute of limitations.  Even *assuming arguendo* that Mr. King's statement on the claim form submitted to Travelers is correct and that the last day on which work was performed on the project by Plaintiff was

13

September 1, 2008, the instant suit would still have been barred upon its filing on September 2, 2009.

Furthermore, Plaintiff itself states that is aware of the applicability of the Miller Act and, presumably, the statute of limitations.   The record before the Court does not support Plaintiff's request that Defendants be equitably estopped from relying on the Miller Act's statute of limitations.

New Orleans, Louisiana, this 7TH day of July, 2011.

UNITED STATES DISTRICT JUDGE

14